Case 1:21-mj-00405-RMM   Docume

Case: 1:21-mj-00405
Assigned To : Meriweather, Robin M.
Assign. Date : 4/27/2021
Description: COMPLAINT W/ ARREST WARRANT

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, John M. Capano, being duly sworn, depose and state as follows:

### PURPOSE OF AFFADIVIT

1. This Affidavit is submitted in support of a Criminal Complaint charging DEANDRE JAMAL POSEY (hereinafter, "POSEY") with a violation of 18 U.S.C. § 922(g)(1).

### INTRODUCTION

2. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3. I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since May 2016, and a sworn law enforcement officer since July 2014 (having previously been a Police Officer in the New York City Police Department). I am currently assigned to the ATF Washington Field Division, High Intensity Drug Trafficking Area (HIDTA) group, which is tasked with investigating drug-related crime. I have successfully completed numerous training programs hosted by ATF, the Federal Law Enforcement Training Center, and other law enforcement agencies and organizations. I have received specialized training in the investigation of federal crimes involving the trafficking and possession of firearms and controlled substances. Further, I have participated in numerous drug and firearm trafficking investigations that resulted in the arrest and convictions of numerous subjects, the seizure of property and assets, and the seizure of controlled substances and firearms.

4. I submit this affidavit in support of a criminal complaint and arrest warrant charging

1

that, on or about April 26, 2021, within the District of Columbia, DEANDRE POSEY, after being convicted of a crime punishable by a term of imprisonment greater than one year, did unlawfully, knowingly, and intentionally possess a firearm that has traveled in interstate commerce in violation of Title 18, United States Code, Section 922(g)(1). The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended merely to show that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

5. On March 29, 2021, an ATF Confidential Informant[1], (hereinafter the "CI"), called POSEY at 202-597-7154 to set up the purchase of a half-pound of marijuana for the following day, March 30, 2021. During the phone call, POSEY and the CI agreed on a price between $1200 and $1250.

6. On March 30, 2021, the CI was instructed to purchase marijuana from POSEY at 4665 South Capitol Street SW, Washington, D.C. Prior to the purchase, the CI vehicle was equipped with a video recording device and the CI was provided with an additional recorder/transmitter. Law enforcement searched the CI and CI vehicle, which yielded no contraband. Before leaving for the Exxon at 4665 South Capitol Street SW, the CI was given

---

[1] An ATF CI was used during this investigation. The CI provided information regarding narcotics traffickers in the District of Columbia and conducted controlled purchases of narcotics. The CI was shown to be reliable to law enforcement. The CI never knowingly made any statements known to be untruthful to your affiant or other agents involved in this investigation. Most of the information that the CI provided was corroborated, to the extent possible, through surveillance and controlled purchases of narcotics. The CI was compensated by law enforcement for the assistance it provided. The CI has a criminal history that includes a felony narcotics conviction.

2

$1500.00 of recorded ATF funds and, at about 1:35 p.m., called POSEY to inform him that the CI was about 5 minutes away. POSEY informed the CI that he was "out here."

7. The CI arrived at the Exxon at about 1:40 p.m. and parked on the parking lot near the gas pumps. The CI then exited the vehicle and approached POSEY, who was standing outside of the gas station. After greeting the CI, agents monitoring Close Circuit Television (CCTV) footage of the exterior of the Exxon saw POSEY approach an unidentified black male (hereinafter, UNIDENTIFIED SUBJECT) who was standing near a dark blue BMW sedan with darkly tinted windows. After POSEY approached UNIDENTIFIED SUBJECT, UNIDENTIFIED SUBJECT reached into the front of the BMW, at which time the vehicle's trunk opened. UNIDENTIFIED SUBJECT then pulled a black bag from the trunk of the car and handed it to POSEY.

8. POSEY and the CI then walked over to the CI's car and got in about 1:42 p.m. The CI entered the driver's seat and POSEY the front passenger seat. POSEY placed the black plastic bag he had received from UNIDENTIFIED SUBJECT on the car's center console. The CI examined the contents and remarked to POSEY that the CI was going to trade it for a pistol. The CI then paid POSEY $1250.00 in recorded ATF funds for the suspected marijuana. The CI and POSEY briefly discussed "dog food" and "eight balls" (common slang terms for heroin and 3.5 grams of cocaine base, respectively) and POSEY stated he would have to check about getting them. The CI then told POSEY that the CI bought those (referring to narcotics) and traded them for guns. The CI then said that it needed them (referring to guns), leading POSEY to say he needed something too. The CI then asked POSEY whether he needed "something" (referring to a gun), to which POSEY replied, "hell yeah." CI indicated that it would check back with POSEY for the

firearm and asked POSEY to let the CI know if POSEY got "dog food." POSEY left the vehicle at about 1:44 p.m. The CI then departed.

9. Following the purchase, the CI was met by law enforcement and led to out of the area. Agents weighed the suspected marijuana, which weighed about 232.1 grams, including packaging. Law enforcement later conducted a field test of a small sample of the suspected marijuana which resulted in a positive reaction for the presence of THC. The alleged marijuana has since been submitted to a DEA laboratory for analysis.

10. On April 3, 2021, the CI placed a recorded phone call to POSEY to discuss a firearm transaction. The CI told POSEY that the CI talked to the CI's man about "what we talked about" (referring to a conversation between POSEY and the CI about firearms on March 30, 2021). The CI then asked POSEY how much he was trying to spend, to which POSEY asked what the price was. The CI alluded to an automatic firearm costing fifteen hundred or twelve hundred dollars. The CI then told POSEY that the CI could probably get something else for less, to which POSEY replied affirmatively. The CI then asked "that's what you want?" POSEY stated, "really four oh." The CI told POSEY that the CI would check and call POSEY back. Based on the context of the conversation, your affiant's training and experience, and the investigation to date, your affiant believes "really four oh" to mean that POSEY is requesting a .40 caliber pistol from the CI.

11. On April 14, 2021, the CI made two calls to POSEY without receiving a response. Later that day, POSEY called the CI back. After exchanging greetings, the CI informed POSEY that the CI would come see POSEY in a few days and would need the "same thing" (referring to a half pound of marijuana). POSEY replied "yeah." The CI then asked POSEY what he needed. POSEY replied, "four o." POSEY also stated "no 9." As POSEY and the CI continued to speak,

4

POSEY told the CI to tell the CI's associate to get POSEY a "compact four five." Based on your affiant's experience, training and the investigation to date, your affiant believes that POSEY is requesting a .40 caliber pistol or a .45 caliber compact pistol, and "9" refers to a 9 millimeter pistol. The above conversation was recorded by law enforcement.

12. On April 21, 2021, the CI made a recorded call to POSEY to discuss a future firearm transaction. POSEY and the CI exchanged greetings, followed by the CI informing POSEY that his associate had had some "ID problems." The CI then told POSEY they would be ready sometime next week. The CI also told POSEY that it would be $800.00 and that POSEY could pay in either cash or marijuana. POSEY agreed and said that if he did that, he would pay 80 grams of marijuana.

13. On April 24, 2021 at about 1:03 p.m., the CI called POSEY and informed him that the CI was going to pick "your thing" (referring to a firearm) up in the morning. The CI then told POSEY that the CI would meet him on Monday morning. The CI and POSEY discussed the logistics and payment for the transaction before the call ended. POSEY later called the CI at about 1:34 p.m. with no response from the CI. The CI called POSEY back at about 1:42 p.m. At that time, POSEY explained that he had called the CI back to ask whether there was a "carton of eggs with it." Based on your affiant's training, experience in conducting firearms and narcotics investigations, as well as participated in this investigation, your affiant believes that POSEY asking about a "carton of eggs" is actually POSEY asking the CI whether the firearm will come with ammunition. The above calls were recorded by law enforcement.

14. On April 26, 2021, the CI called POSEY at about 6:39 a.m. and agreed to meet POSEY near the Exxon. A short time later, the CI called POSEY again and told him to meet the

CI at the post office (located at 400 Southern Avenue SE, Washington, D.C.). These calls were recorded by law enforcement.

15. POSEY, alone in a white sedan, arrived at the post office at about 7:33 a.m. Upon arriving, POSEY got into the CI's vehicle and began weighing bags of suspected marijuana. After discussing the weight of the suspected marijuana, the CI provided POSEY with a Glock Model 36 .45 caliber pistol, bearing serial number FUG075 in exchange for the suspected marijuana. The CI got out of the vehicle to retrieve ammunition for POSEY, at which time the arrest was initiated. At the time of his arrest, POSEY was standing at the rear of the CI's vehicle and was taken into custody without incident. Law enforcement recovered the Glock pistol from POSEY's jacket pocket.

16. In 2019, POSEY was arrested and charged in the Superior Court for the District of Columbia with Robbery (case no. 2019 CF3 004218) for an offense committed on or about March 15, 2019. POSEY later pled guilty to one count of Attempt to Commit Robbery on May 31, 2019. On August 1, 2019, POSEY was sentenced to 32 months incarceration with all but 14 months suspended, followed by a term of supervised probation.

17. Glock pistols are not manufactured within the District of Columbia, thus the firearm in POSEY'S possession traveled in interstate commerce.

## CONCLUSION

18. Based upon the foregoing, I submit there is probable cause to believe that, on or about April 26, 2021, within the District of Columbia, the defendant, DEANDRE POSEY, knowing he had previously been convicted of a crime punishable by a term of imprisonment greater than one year in the Superior Court for the District of Columbia, did unlawfully, knowingly,

and intentionally possess a firearm, that is, a Glock Model 36 .45 caliber pistol, bearing serial number FUG075, which has been possessed, shipped, and transported in and affecting interstate and foreign commerce in violation of Title 18, United States Code, Section 922(g)(1).

Respectfully submitted,

_____
Special Agent John M. Capano
Bureau of Alcohol, Tobacco, Firearms and Explosives

Attested to by applicant in accordance with the required of Fed. R. Crim. P. 4.1 by Telephone (specify reliable electronic means).

_____
The Honorable Robin M. Meriweather
United States Magistrate Judge